```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF GEORGIA
                      ATLANTA DIVISION


UNITED STATES OF AMERICA       :     CRIMINAL ACTION
                               :
           v.                  :     NO. 1:13-CR-404-JEC-ECS
                               :
RICHARD DONNOVAN JOHNSON       :
```

**REPORT AND RECOMMENDATION**
**OF THE MAGISTRATE JUDGE**

**I.**
**Introduction**

This matter is before the Court on Defendant's motion to suppress statements. [Doc. 17]. The motion came on for evidentiary hearing on January 22, 2014. The transcript of the hearing was filed February 3, 2014. [Doc. 26]. Defendant then filed his post-hearing brief, [Doc. 33], and the government responded. [Doc. 34]. Although permitted to file a reply by March 24, Defendant elected not to reply. The motion is therefore ready for a report and recommendation to the district judge.

Defendant seeks to suppress statements he made to an Army Criminal Investigator on November 14, 2012, at the Lawrenceville Police Department. Defendant contends that the statements were custodial, made without benefit of <u>Miranda</u> warnings, and involuntary. [Doc. 33 at 1]. The government opposes the motion.

## II.
## The Interview: Factual Background

Defendant stands charged by indictment in this case with aggravated sexual abuse and sexual abuse in violation of 18 U. S. C. §§ 2241 and 2242. [Doc. 1]. The acts charged in the indictment are alleged to have occurred on or about October 11, 2008, in and around Camp Humphreys, South Korea, at a time when Defendant was in the United States Army stationed there. [Id.].

In November 2012, Michael Baxendale, a criminal investigator employed by the Army Criminal Investigation Division ("CID") at Fort Benning in Columbus, Georgia, was assigned to seek to interview Defendant about a sexual assault that allegedly occurred in Korea. (T. 4).[1] He contacted Defendant, through his wife, and set up an interview with Defendant for November 14, 2012, at the Lawrenceville Police Department. (T. 5). The interview was set at the police department in Lawrenceville because it was not far from Defendant's home. (Id.). The police department was chosen by Investigator Baxendale because he considered it a "neutral" venue for the interview. (T. 14).

Defendant agreed to meet Investigator Baxendale at the police station at between 5:40 and 6 o'clock in the evening, after

---

[1] References to the evidentiary hearing transcript, [Doc. 26], will be indicated as follows: (T. "page").

2

Defendant got off work and after hours at the police station. (T. 6, 46). Defendant drove himself to the interview in his own car. (T. 7, 47). Mr. Baxendale met Defendant outside the station and they then went inside to an interview room. (T. 8, 58). A Lawrenceville police officer was also present at the station at the time of the interview, but he did not participate in the interview. (T. 8, 13). Mr. Baxendale was also accompanied to the station by another Army CID Investigator who was there to interview someone else unrelated to Defendant's case. (T. 14).

Investigator Baxendale had placed his weapon in a lock box before Defendant arrived and was unarmed during the interview. He was dressed casually, in a polo shirt and khakis. (T. 22). After he and Defendant met outside, they entered the police station and went to the interview room, which was furnished with two chairs and a small coffee table. (T. 15). Mr. Baxendale was the only officer present during the interview. (T. 13, 41).

At the outset, Investigator Baxendale showed Defendant his badge, (T. 8), and told him he was not under arrest or going to be arrested. (T. 9, 23, 50). He also told him he could leave whenever he wanted and that the meeting was strictly voluntary. (T. 9). He was never, in fact, formally placed under arrest. (T. 49). The interview began with questions about Defendant's personal information so that Mr. Baxendale could fill out a personal data

3

sheet. (T. 10). When that was done, Mr. Baxendale brought up the matter of the allegations of sexual assault in Korea that had been made against Defendant. (Id.). Defendant testified that he initially thought that the interview was going to be about a possible job. (T. 40, 48). The entire meeting lasted about 2 ½ hours, including the cheek swab and fingerprints that took place at the end of the meeting. (T. 10). About 1 hour and 50 minutes were spent talking about the case. (T. 17). Defendant never asked for a lawyer, (T. 13), nor did he ask to leave during the questioning. (T. 10).

   Investigator Baxendale asked Defendant at some point if he would give a written statement, but he declined. (T. 10, 17, 44). Mr. Baxendale said Defendant told him he did not want to incriminate himself by giving a written statement, (T. 11), but Defendant denied making this statement. (T. 44). During the interview, Mr. Baxendale asked Defendant if he would submit to a polygraph, and Defendant indicated that he would, but one was never administered. (T. 12). At the end of the interview session, Defendant said he did not want to talk any more. (T. 17). He testified that he told Mr. Baxendale at that point that he was ready to go. (T. 42).

   When Defendant said he did not want to talk any more, Mr. Baxendale asked him if he would agree to give a DNA sample and fingerprints. Defendant agreed. (T. 10-11, 17, 54). He was told that doing this was voluntary; that he did not have to give the DNA or

4

the prints. (T. 10-11). Defendant was taken into another room where Investigator Baxendale took the cheek swab and the fingerprints. (T. 57, 59). Mr. Baxendale walked with Defendant out of the police station after the swab and the fingerprints were taken. (T. 22).

### III.
### Discussion

**A. Was Defendant "in custody" and entitled to <u>Miranda</u> warnings?**

A person taken into custody must be advised of his right to remain silent and his right to counsel prior to any interrogation. <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S. Ct. 1602 (1966). The evidence is undisputed here that Defendant was not advised of his <u>Miranda</u> rights prior to questioning. The government contends that <u>Miranda</u> warnings were not required because Defendant was not in custody when he made the statements. [Doc. 34 at 5-14].

Custody involves the deprivation of "freedom of action in any significant way." <u>Miranda</u>, 384 U.S. at 444, 86 S. Ct. at 1612. "Even if a person has not been arrested, advice of <u>Miranda</u> rights is required if there is a restraint on freedom of movement 'of the degree associated with a formal arrest.'" <u>United States v. Muegge</u>, 225 F.3d 1267, 1270 (11th Cir. 2000)(quoting <u>Minnesota v. Murphy</u>, 465 U.S. 420, 430, 104 S. Ct. 1136, 1139 (1984)). "[T]he initial determination of custody depends on the objective circumstances of the interrogation...." <u>Stansbury v. California</u>, 511 U.S. 318, 323,

5

114 S. Ct. 1526, 1529 (1994). "[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442, 104 S. Ct. 3138, 3151 (1984).

"[I]n order for a court to conclude that a suspect is in custody, it must be evident that, under the totality of the circumstances, a reasonable man in the suspect's position would feel a restraint on his freedom of movement fairly characterized as that 'degree associated with a formal arrest' to such extent that he would not feel free to leave." Muegge, 225 F.3d at 1270. "And, under the objective standard, the reasonable person from whose perspective 'custody' is defined is a reasonable innocent person." United States v. Moya, 74 F.3d 1117, 1119 (11th Cir. 1996) (citing Florida v. Bostick, 501 U.S. 429, 437-38, 111 S. Ct. 2382, 2388 (1991)).

I cannot conclude that Defendant was "in custody" when he was interviewed by Investigator Baxendale such that warnings under Miranda were required. The facts are recited in detail above. Defendant was asked to come to the police station, after hours, to be interviewed. He came voluntarily, in his own vehicle. The meeting was scheduled after Defendant's work day for his convenience. He was not ordered to appear or told that he had to come in. He was not told he was going to be arrested. Indeed, he was told he was not going to be arrested and was not under arrest. In fact, after he met

6

with Investigator Baxendale, was interviewed, and then voluntarily gave a cheek swab and fingerprints, he was allowed to go on his way. Nobody threatened him or pointed a weapon at him. He was not handcuffed. A reasonable innocent person in Defendant's position would not have felt that he was under arrest or that he was not free to leave.

**B. Were Defendant's Statements Voluntary?**

Finding that Defendant was not required to be Mirandized does not, however, end the inquiry. The statements must also have been made voluntarily. Chavez v. Martinez, 538 U.S. 760, 769-70, 123 S. Ct. 1994, 2002 (2003). The voluntariness of a statement must ultimately be assessed under the totality of the circumstances, considering such factors as the defendant's intelligence, the length of detention, the nature of the interrogation, and the use of any physical force against the defendant. Schneckloth v. Bustamonte, 412 U.S. 218, 226, 93 S. Ct. 2041, 2047 (1973) (citations omitted); Miller v. Dugger, 838 F.2d 1530, 1536 (1988) (the district court must consider the totality of the circumstances in assessing whether police conduct was causally related to the confession); United States v. Thompson, 422 F.3d 1285, 1295 (11th Cir. 2005) (same); United States v. Estelan, 156 F. App'x. 185, 194 (11th Cir. 2005) (same). The inquiry focuses on whether the defendant's free will was overborne by any improper influence of law enforcement. Colorado v.

7

Connelly, 479 U.S. 157, 170, 107 S. Ct. 515, 523 (1986); see also United States v. Gonzalez, 71 F.3d 819, 828 (11th Cir. 1996) (holding that in the context of voluntariness of consent to search, "the absence of official coercion is a *sine qua non* of effective consent") (citations omitted). "[A] confession induced by threats or promises is not voluntary." United States. v. Vera, 701 F.2d 1349, 1364 (11th Cir. 1983) (citing Bram v. United States, 168 U.S. 532, 542, 18 S. Ct. 183, 187 (1897)).

Defendant's statements in this case were not coerced. No threats or promises were made to induce his statement. There was no official coercion. No physical force was used against him. As noted above, he came voluntarily to the police station for the interview. He was never under arrest. He was allowed to go on his way after he gave his statement. The evidence simply does not support a conclusion that there was anything coercive about the circumstances of this encounter between the Army CID investigator, unarmed and dressed casually, and the Defendant. His free will was not overborne. In short, the statements were voluntary.

## IV.
## Conclusion

In summary, I conclude that Defendant was not in custody for purposes of Miranda. Miranda warnings were not required. Furthermore, the statements Defendant made were not coerced or

8

involuntary.

Accordingly, **IT IS REPORTED AND RECOMMENDED** that the motion to suppress statements, [Doc. 17], be **DENIED**.

In addition, it appearing that there are no further pretrial or discovery matters to bring before the undersigned, it is therefore **ORDERED** that this case be and is hereby **CERTIFIED** as ready for trial.

**SO REPORTED AND RECOMMENDED**, this 25th day of April, 2014.

*S/ E. Clayton Scofield III*
E. Clayton Scofield III
UNITED STATES MAGISTRATE JUDGE

9